ROLAND L. BELSOME, Judge.
hUpon reversing this Court’s decision of December 19, 2012,[1] which vacated defendant’s conviction and sentence and remanded for a new trial, the Louisiana Supreme Court has remanded and directed us to consider the remaining assignments of error.[2]
In this Court’s previous decision, we found that the trial court had erred by publishing an eyewitness’ grand jury testimony. The following is the statement of the case as provided in that opinion:
The appellant was found guilty of a homicide that occurred on October 6, 2008 near the intersection of L.B. Landry and Erie Streets in Algiers. The intersection is near the Fisher Housing Development. On that day, two victims were shot; one survived. The surviving victim would not cooperate with police. Tips received through Crimestoppers indicated that the SuWu gang was responsible for the shootings, and the appellant is a known member of the SuWu gang. Conrad Jackson was the only eyewitness that came forward and identified appellant as one of the perpetrators. Mr. Jackson gave a recorded statement to Detective Anthony Pardo, and he also testified before the grand jury detailing the incident and identifying the appellant. At the time that Mr. Jackson appeared in court for the appellant’s trial, he was incarcerated. He admitted to having charges pending against him and to having numerous prior drug convictions. Mr. Jackson then testified that on October 6, 2008, he was on his way to visit his niece in the Ficher Housing Development. From that point forward, Mr. Jackson became unresponsive except to deny seeing appellant shoot the deceased. When pressed by the prosecution, he admitted giving a statement to Detective Pardo; however, he stated that he |gwas just saying whatever the detective wanted to hear. Further, Mr. Jackson also recalled viewing a six-person lineup shown to him by Detective Pardo, but he claimed that he chose appellant’s picture from the lineup simply because he knew appellant and not because he was one of the perpetrators of the homicide.
A portion of his recorded statement was then played for the jury; Mr. Jackson identified his voice on the recording. At that point, the proceedings were stopped, and the district court obtained counsel for Mr. Jackson. Although he attempted to invoke his Fifth Amendment right not to testify, the court ruled that he could not invoke the Fifth Amendment in advance of any potentially perjured testimony. The remainder of his recorded statement was then played for the jury.
*1121 After the statement was played, Mr. Jackson pled the Fifth Amendment when he was asked whether he remembered giving the statement. When asked whether he remembered speaking to Assistant District Attorney Margaret Parker, he was nonresponsive. Mr. Jackson was then declared a hostile witness at the request of the state. Thereafter, he refused to respond to any of the questions that were asked regarding his previous statements about witnessing the murder.
Mr. Jackson also claimed that he did not remember testifying before the grand jury. The prosecution urged the trial court to allow a transcript of Mr. Jackson’s grand jury testimony to be produced to the jury. Over the objection of defense counsel, the trial court allowed the transcript of the grand jury testimony to be published for the jury. After the jury reviewed a transcript of his testimony, Mr. Jackson once again claimed not to remember telling the grand jury that the appellant shot the deceased or anything else regarding his grand jury testimony.
The transcript stated that on October 6, 2008, Jackson was headed to the Fisher Housing Development to visit his niece. He was driving his car on a street that runs along the side of the Development; the car in front of him pulled over to the right in front of a corner store. Two people jumped out of the car that pulled over and shot the deceased in front of the store. He personally knew one of the shooters, the appellant.
In accordance with the Supreme Court’s directive, we will review the defendant’s remaining assignments of error. There are three additional assignments of error: 1) insufficient evidence to support the conviction; 2) Conrad Jackson’s statement to the police was erroneously admitted; and 3) the district |scourt erred in admitting the hearsay evidence of Assistant District Attorney (ADA) Margaret Parker. Sufficiency of the Evidence
It is well established that on appeal this Court applies the Jackson standard when determining whether the evidence was constitutionally sufficient to support a conviction.[3] When the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Neal, 2000-0674, p. 11 (La.6/29/01), 796 So.2d 649, 658; State v. Weary, 2003-3067, p. 18 (La.4/24/06), 931 So.2d 297, 311.
The entirety of the evidence, both admissible and inadmissible, is to be considered when assessing a conviction for sufficiency of the evidence. State v. Hea-rold, 603 So.2d 731 (La.1992); State v. Brown, 2008-1434, p. 8 (La.App. 4 Cir. 3/18/09), 7 So.3d 1238, 1242. If a defendant claims on appeal that certain evidence was improperly admitted, and the reviewing court finds that any rational trier of fact, viewing all the evidence in a light most favorable to the prosecution, could have found all the essential elements of the offense present beyond a reasonable doubt an acquittal will not be granted. However, the reviewing court will then review other assignments of trial errors, including admissibility arguments, to determine whether the defendant is entitled to a new trial. *1122 Hear old, 603 So.2d at 734; Brown, 2008-1434 at pp. 8-9, 7 So.3d at 1242. Additionally, if it is determined that there has been an error by the trial court that was not deemed ^harmless, the defendant must receive a new trial, but is not entitled to acquittal even though admissible evidence, considered alone, was insufficient. Hea-rold, 603 So.2d at 734; Brown, 2008-1434 at pp. 8-9, 7 So,3d at 1242-1243.
The defendant was convicted of second degree murder. The definition of second degree murder that is applicable to this case is: the killing of a human being when the perpetrator has the specific intent to kill or to inflict great bodily harm.[4]
The defendant does not dispute that the victim was shot numerous times or that whoever shot the victim had the specific intent to kill or inflict great bodily harm. His argument is that the only evidence that identified him as the perpetrator was the grand jury testimony of Conrad Jackson, the hearsay testimony of ADA Margaret Parker, and Mr. Jackson’s recorded statement to Detective Pardo, all of which he argues was inadmissible.
However, we now know that the transcript of Mr. Jackson’s grand jury testimony was admissible. Thus, viewing the evidence in its entirety in a light most favorable to the prosecution, a rational trier of fact could have found all of the essential elements of the offense of second degree-murder,- namely, that appellant shot the victim with the specific intent to kill or to inflict great bodily harm.
Mr. Jackson unequivocally identified the defendant, whom he knew personally, as the perpetrator of the murder as evidenced by his grand jury testimony. This was further supported by the testimony of ADA Parker and Det. Pardo. As testified to by Det. Pardo, Mr. Jackson chose the defendant’s picture from a six-person lineup as the person he saw shoot the victim. Though Mr. Jackson recanted his identification of the defendant as the perpetrator, the jury apparently found that Mr. Jackson did so out of fear of reprisal, as the state Ifiimplied. Mr. Jackson spoke of his fears to ADA Parker, and he was beaten up in prison after having encountered the defendant, who was a member of a violent gang. Notably, the surviving victim of the shooting refused to cooperate with police.
In accordance with Hearold, we find the evidence presented at trial sufficiently supports the defendant’s conviction.
Conrad Jackson’s statement to Detective Pardo
In this assignment of error, the defendant has urged only that Mr. Jackson’s statement to Det. Pardo was admitted erroneously because it was not properly authenticated in violation of La. C.E. art. 901. However, defense counsel lodged no objections when the statement was introduced by the state and published to the jury. Thus, this error was not preserved for appellate review.[5]
Testimony of Assistant District Attorney Margaret Parker
In this assignment of error, the defendant begins by arguing that ADA Parker’s testimony was improperly admitted because the state failed to lay the proper foundation prior to introducing her testimony.[6] However, no objection was *1123 lodged on that basis. Therefore, that argument was not preserved for review on appeal.[7] The defendant did however object to ADA Parker’s testimony on hearsay grounds. Thus, the defendant additionally urges that ADA Parker’s testimony was |6erroneously admitted because its use was solely as substantive evidence of his guilt.
Louisiana law permits the impeachment of a witness in a criminal trial by his or her prior inconsistent statements.[8] If the probative value outweighs any undue prejudice, extrinsic evidence of the prior statement is admissible, not to prove the truth of the matter asserted, but to establish the fact of contradiction as a means of impeaching the witness’s general credibility.[9]
However, because the inconsistent statement consisted of Mr. Jackson’s identification of the defendant as the perpetrator of the murder, the hearsay objection should be viewed under La. C.E. art. 801(D)(1)(c).[10] Further the Louisiana Supreme Court, citing to a federal case has stated: “[i]f at trial the eyewitness fails to remember or denies that he made the identification, the previous statements of the eyewitness can be proved by the testimony of a person to whom the statement was made, and the statement can be given substantive effect.”[11] Furthermore, the substance of ADA Parker’s testimony was consistent with the grand jury testimony and Det. Pardo’s testimony and therefore cumulative. We find no error in the trial court’s decision admitting the testimony.
17After reviewing the record, in light of the Supreme Court’s recent decision, we affirm the defendant’s conviction and sentence.
AFFIRMED

. State v. Ross, 11-1668 (La.App. 4 Cir. 12/19/12), 144 So.3d 1037, 2012 WL 6621342 (Love, J., dissenting).

. State v. Ross, 13-0175 (La.3/25/14), 144 So.2d 932, 2014 WL 1190158.

. In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

. La. R.S. 14:30.1(A)(1).

. La.C.Cr.P. art. 841; State v. Landos, 2007-0082, 2007-0716 (La.4/8/Ó8), 980 So.2d 643.

.It appears that a proper foundation was laid. When asked whether he spoke to ADA Parker, whether he told her that he saw the defendant do the shooting, and whether he expressed to her concerns about his safety and the safety of his family, Mr. Jackson ei *1123 ther pled the Fifth Amendment, gave a nonverbal response, or denied seeing the defendant shoot the victim. See La. C.E. 613.

. La.C.Cr.P. art. 841.

. La. C.E. art. 607(D)(2); State v. Mosely, 360 So.2d 844, 845-46 (La. 1978).

. Id.

. La. C.E. art. 801(D) reads in pertinent part:
Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The declar-ant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
[[Image here]]
(c) One of identification of a person made after perceiving the person.

.State v. Johnson, 99-3462, p. 2 (La. 11/3/00), 774 So.2d 79, 80 (citing United States v. Brink, 39 F.3d 419, 426 (3d Cir. 1994)).